## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZOLINDA KIRIAKDIS and JULIAN BABITZ, | ) |
| | ) |
| | ) CIVIL ACTION NO. 3:12-188 |
| Plaintiffs, | ) |
| | ) JUDGE KIM R. GIBSON |
| v. | ) |
| | ) |
| BOROUGH OF VINTONDALE POLICE DEPARTMENT and OFFICER ERIC YACKULICH, | ) |
| | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OF COURT

#### I.  SYNOPSIS

This civil rights matter comes before the Court on a Motion to Dismiss (Doc. 9) filed by the Defendants Borough of Vintondale ("Vintondale") and Officer Eric Yackulich ("Officer Yackulich").[1] Defendants contend that Plaintiffs Zolinda Kiriakidis ("Kiriakidis") and Julian Babitz ("Babitz") did not file suit within the applicable statute of limitations period and that Plaintiffs have failed to state claims upon which relief can be granted. For the reasons that follow, the Court will grant Defendants' motion.

#### II.  JURISDICTION AND VENUE

The Court exercises federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper pursuant to 28 U.S.C. 1391(b)(2) because a substantial portion of the events or omissions giving rise to the claims occurred in the Western District of Pennsylvania.

---

[1] Plaintiffs incorrectly designate this action against the Borough of Vintondale Police Department. As will be discussed in this Memorandum, the Borough of Vintondale Police Department is not a "person" for purposes of § 1983 litigation. See infra Part V.B.3. Although it is not a named party to this action, the Borough of Vintondale has responded to the allegations set forth in the Complaint because the Borough of Vintondale Police Department is not the proper party.

## III. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Count I of the Complaint

This case arises from a series of events that occurred at a traffic stop. On August 28, 2010, at approximately 7:00 p.m., Officer Yackulich, a police officer with the Borough of Vintondale Police Department, pulled over Kiriakidis after witnessing her "erratic driving." (See Doc. 1, Compl. ¶¶ 10-11). Kiriakidis subsequently drove to a "safe spot and pulled over." (Id. ¶ 12). After Officer Yackulich approached the vehicle, he allegedly "pulled [Kiriakidis] out of the vehicle by her shoulders and began yelling obscenities at her" and thereafter "slammed [Kiriakidis] against a wall and threw her to the ground with extreme force causing her extreme injuries." (Id. ¶¶ 13-14).

After the initial confrontation, Officer Yackulich placed Kiriakidis in the backseat of his police vehicle and left her there for "several hours." (Id. ¶ 18). Kiriakidis further claims that Yackulich did not roll down the vehicle's windows or run the vehicle's air conditioning unit and, as a result, Kiriakidis had difficulty breathing. (See Doc. 1, Compl. ¶ 21). According to Kiriakidis, another unnamed officer who later arrived at the scene had to "rescue" her by immediately rolling down the windows and by turning on the air conditioning unit to its maximum level. (See id. ¶¶ 19, 21).

Kiriakidis claims that, due to Officer Yachulich's "excessive use of force," she suffered "severe personal injuries including neck injury and pain; concussion; headache [sic]; extreme shoulder pain; severe pain and suffering; and severe mental and emotional distress." (Id. ¶ 24). Kiriakidis seeks compensatory damages in excess of $200,000, punitive damages, and attorney's fees plus costs. (Id. ¶ 27).

2

**B.    Count II of the Complaint**

According to the Complaint, Julian Babitz also witnessed the arrest in question and heard Kiriakidis yell for "help" and for someone to "call the state police." (See Doc. 1, Compl. ¶ 28). Babitz attempted to help Kiriakidis, but Officer Yackulich allegedly responded by yelling obscenities at Babitz and by telling him "to go away." (See id. ¶¶ 29-32). After the incident, Officer Yackulich purportedly charged Babitz "with multiple felonies for crimes that did not exist." (Id. ¶ 32). Babitz further claims that Officer Yackulich continued to harass him "for various things including filing criminal charges against him for removing water meters from a building that he owned." Id. ¶ 34). Babitz avers that, as a result of the "intentional malicious acts" by Officer Yackulich and the Vintondale Borough Police Department, Babitz developed a "bad heart resulting in Open-heart surgery." (Id. ¶ 36). Babitz seeks compensatory damages in excess of $200,000, punitive damages, and attorney's fees plus costs. (Id. ¶ 37).

**C.    Count III of the Complaint**

Plaintiffs further claim that the County of Cambria and the Vintondale Police Department "tolerated and ratified a pattern and practice of unjustified unreasonable illegal use of force." (Doc. 1, Compl. ¶ 38). Specifically, Plaintiffs aver that the "municipal defendants" failed to "discipline or prosecute or in any manner deal with known incidents of abuse of police powers," refused to investigate complaints of "previous incidents of abuse of police powers," and encouraged police officers "to believe that such abuse of police powers and improper use of force was permissible." (See id.). Plaintiffs also claim that the "municipal defendants" maintain a "system of grossly inadequate training pertaining to the law of permissible use of force." (See id.).

3

**D.    Procedural History**

On August 29, 2012, Plaintiffs initiated this action by filing suit pursuant to 42 U.S.C. § 1983, alleging that Defendants violated the Fourth Amendment to the United States Constitution. (Doc. 1, Compl. ¶¶ 1-5). Each of the Complaint's three counts state that judgment is sought against "Officer Yackulich jointly, severally and in the alternative in a sum in excess of Two Hundred Thousand Dollars plus punitive damages, interests, costs, attorney's fees and damages." Although this language does not clearly specify whom Plaintiffs are seeking damages against, the Court infers that, based on the caption of the Complaint, Plaintiffs are requesting relief on all three counts against the County of Cambria, the Vintondale Police Department, and Officer Yackulich in his individual capacity.

On February 19, 2013, Defendants filed the instant motion to dismiss (Doc. 9), alleging that Plaintiffs failed to satisfy the applicable statute of limitations period and, in the alternative, that Plaintiffs failed to set forth claims upon which relief can be granted. On March 11, 2013, the Court dismissed the action without prejudice as to Defendant County of Cambria pursuant to Rule 4(m) of the Federal Rules of Civil Procedure for failure to make service within 120 days of filing the Complaint. (See Doc. 15). The instant motion has been fully briefed and is ripe for disposition.

**IV.    STANDARD OF REVIEW**

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a complaint or portion of a complaint for failure to state a claim upon which relief can

4

be granted. Fed. R. Civ. P. 12(b)(6). Although the federal pleading standard has been "in
the forefront of jurisprudence in recent years," Fowler v. UPMC Shadyside, 548 F.3d
203, 209 (3d Cir. 2009), the standard of review for a Rule 12(b)(6) challenge is now well
established.

In determining the sufficiency of the complaint, a district court must conduct a
two-part analysis. First, the court must separate the factual matters averred from the legal
conclusions asserted. See Fowler, 578 F.3d at 210. Second, the court must determine
whether the factual matters averred are sufficient to show that the plaintiff has a
"plausible claim for relief." Id. at 211 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679
(2009)). The complaint need not include "detailed factual allegations." Phillips v. Cnty.
of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 555 (2007)). Moreover, the court must construe the alleged facts, and
draw all inferences gleaned therefrom, in the light most favorable to the non-moving
party. See id. at 228 (citing Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir.
2003)). However, "legal conclusions" and "[t]hreadbare recitals of the elements of a
cause of action . . . do not suffice." Iqbal, 556 U.S. at 678. Rather, the complaint must
present sufficient "factual content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged." Sheridan v. NGK Metals Corp.,
609 F.3d 239, 263 n.27 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 678).

Ultimately, whether a plaintiff has shown a "plausible claim for relief" is a
"context specific" inquiry that requires the district court to "draw on its judicial
experience and common sense." Iqbal, 556 U.S. at 679. The relevant record under
consideration includes the complaint and any "document integral or explicitly relied on in

5

the complaint." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). If a complaint is vulnerable to dismissal pursuant to Rule 12(b)(6), the district court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. Phillips, 515 F.3d at 236; see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) ("[L]eave to amend generally must be granted unless the amendment would not cure the deficiency.").

## V. DISCUSSION

Defendants assert two main theories on which they argue that a motion to dismiss is warranted. First, Defendants argue that the applicable statute of limitations should bar Plaintiffs' claims.[2] Second, Defendants argue that, even assuming the action is not time-barred, Plaintiffs have failed to state any claims upon which relief can be granted. The Court addresses each theory in turn.

### A. Statute of Limitations

In suits brought pursuant to 42 U.S.C. § 1983, federal courts must apply the forum state's statute of limitations period for personal injury claims. See, e.g., Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998) (citations omitted). Pennsylvania's statute of limitations period for personal injury claims is two years. See 42 Pa. Cons. Stat. Ann. § 5524 (West 2010). In the case *sub judice*, the parties do not

---

[2] Defendants assert in the Brief in Support of Motion to Dismiss that "Plaintiffs' claims are time-barred by the applicable statute of limitations." (See Doc. 10, at 4). Although Defendants' brief lacks clarity on this point, the central premise for its statute of limitations argument is that the police encounter at issue occurred on August 28, 2010. However, Plaintiffs have set forth some claims that are not based entirely on the August 28, 2010 encounter. For instance, in Count II, Babitz argues that police continually harassed him after the incident on August 28, 2010 and that police subsequently "filed criminal charges against him." (Doc. 1, Compl. ¶ 34). Furthermore, the Court finds that there are other grounds on which to dismiss Counts II and III of the Complaint. See infra Part V.B. Accordingly, the Court addresses Defendants' argument that Plaintiffs' claims are time-barred as to Count I of the Complaint only.

6

dispute the applicable statutory period but rather disagree as to when the two-year period began to accrue. (See Doc. 18, at 1; Doc. 9, at 1). Although the relevant statutory period is a question of state law, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388 (2007) (emphasis in original). According to federal common-law tort principles, the accrual date begins "when the plaintiff has 'a complete and present cause of action.'" Wallace, 549 U.S. at 388 (citations omitted).

Count I of the Complaint is premised on excessive use of force by a police officer.[3] The Third Circuit has held that, in regards to excessive use of force claims, the limitations period begins "when the plaintiff knows or had reason to know the injury forming the basis for the federal civil rights action." Large v. Cnty. of Montgomery, 307 F. App'x 606, 607 (3d Cir. 2009). In other words, the accrual date for an excessive use of force claim begins to run on the date of the alleged mistreatment. See id.

Plaintiffs aver in the Complaint that Officer Yackulich pulled over Kiriakidis on August 28, 2010. The alleged use of excessive force—that is, when the officer purportedly slammed Plaintiff against a wall and threw her to the ground—occurred on August 28, 2010. Plaintiffs filed their Complaint on August 29, 2012, exactly two years and one day after the alleged incident occurred. In Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, Kiriakidis argues that Officer Yachulich's unlawful acts "continued well into the early morning hours of August 29, 2010." (Doc. 19, at 4).

---

[3] The Court agrees with Defendants' observation that Count I does not plainly set forth the "exact contours" underlying the alleged civil rights violations. (See Doc. 10, at 6). However, Kiriakidis avers that Officer Yackulich violated the Fourth Amendment to the United States Constitution and describes an incident of "excessive use of force." (Doc. 1, Compl. ¶¶ 23, 27). Notwithstanding the ambiguity in Plaintiffs' insufficiently drafted Complaint, the Court finds that Kiriakidis is attempting to bring suit pursuant to 42 U.S.C. § 1983 on ground that Officer Yackulich used excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

However, for purposes of a Rule 12(b)(6) challenge, the Court must consider the pleadings in the Complaint only. After reviewing the Complaint, the Court finds that Kiriakidis has not pleaded sufficient facts to show compliance with the applicable statute of limitations. Specifically, Count I of the Complaint contains allegations that, on August 28, 2010, Officer Yackulich "pulled [Kariakidis] out of the vehicle by her shoulders," that Officer Yackulich "slammed [Kiriakidis] against a wall and threw her to the ground," and that Officer Yackulich "placed her in the back seat of a police car with all of the windows and no air condition running for several hours." (See Doc. 1, Compl. ¶¶ 13, 14, 18). Federal common law makes clear that the statute of limitations periods begins to run on the date when the plaintiff had reason to know of the injury forming the basis of her claims. As of August 28, 2010, Kiriakidis had reason to know of her injury. The fact that additional unlawful police action might have occurred on August 29, 2010 does not change the underlying deficiency: Kiriakidis knew or should have known that law enforcement officers violated her constitutional rights on August 28, 2010.

Although the claims set forth in Count I appear to be untimely, the Court will dismiss Count I without prejudice and allow leave to amend in the unlikely event that Kiriakidis can cure the timeliness deficiency. In amending the Complaint, Kiriakidis should further specify the relevant times, dates, and facts supporting the allegations in Count I. Given that, from the allegations in the Complaint, Kiriakidis appears to have violated the statute of limitations period by only one day, the Court believes that Kiriakidis should be afforded an opportunity, if possible, to cure the deficiency.

8

**B.     Viability of Plaintiffs' 42 U.S.C. § 1983 Claims**

As previously discussed, Plaintiffs commenced this action pursuant to 42 U.S.C. §

1983. Section 1983 imposes civil liability on any person who, when acting under the

color of state law, deprives another individual of rights, privileges, or immunities secured

by the Constitution or laws of the United States. See 42 U.S.C. § 1983 (2006). Section

1983 does not create new substantive rights but instead "provides a remedy for the

violation of a federal constitutional or statutory right." Baker v. McCollan, 443 U.S. 137,

144 n.3 (1979). In other words, to state a claim under § 1983, a plaintiff must "show that

the defendant, through conduct sanctioned under the color of state law, deprived her of a

federal constitutional or statutory right." Parratt v. Taylor, 451 U.S. 527, 535 (1981),

overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986).

With this background in mind, the Court turns to the remaining issues that

Defendants raise in the motion to dismiss. Defendants assert that Counts I, II, and III do

not state claims upon which relief can be granted.[4]  The Court reviews these arguments

below.

**1.     Count I of the Complaint:  Excessive Use of Force**

Kiriakidis avers in Count I that Officer Yackulich used excessive force in

violation of the Fourth and Fourteenth Amendments to the United States Constitution.

(See generally Doc. 1, Compl. ¶¶ 10-27). In evaluating a claim that a law enforcement

officer has used excessive force in the course of an arrest or investigatory stop, the

district court must use the standard of "reasonableness" prescribed by the Fourth

Amendment. Graham v. Connor, 490 U.S. 386, 394-95 (1989). "Reasonableness" in this

---

[4] Defendants also raise the issue of qualified immunity as to Officer Yackulich.  The Court will not address
this issue because all three counts in Plaintiffs' Complaint will be dismissed on other grounds.

9

context requires the court to balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396 (quoting United States v. Place, 462 U.S. 696, 703 (1983)). Such an inquiry depends on the facts of each case, thus requiring the court to consider such circumstances as the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; see also Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004). Courts may also consider "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Kopec, 361 F.3d at 777 (citing Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

Defendants elaborate on several prior cases in support of their argument that the alleged force used in the August 28, 2010 police encounter was not excessive. Most of these cases, however, have come before the courts on motions for summary judgment. Moreover, the Court believes that Officer Yachulich's alleged actions might have been excessive under the circumstances. A complaint need not include "detailed factual allegations." See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Rather, the complaint must include sufficient factual content to allow the court to draw a "reasonable inference" of the alleged misconduct. See Sheridan v. NGK Metals Corp., 609 F.3d 239, 263 n.27 (3d Cir. 2010). When reviewing the alleged facts in the light most favorable to Kiriakidis, the Court cannot conclude that Kiriakidis has failed to show

10

a "plausible claim for relief." See Fowler v. UPMC Shadyside, 548 F.3d at 211 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). As provided above, however, the Court will dismiss Count I because Kiriakidis has not pleaded facts sufficient to show compliance with the two-year statute of limitations. Kiriakidis will be permitted to file an amended complaint at to Count I.

## 2. Count II of the Complaint: Malicious Prosecution

Similar to Count I of the Complaint, Count II lacks clarity in terms of the underlying civil rights violation at issue. Because Babitz states that Officer Yackulich wrongfully charged him with "multiple felonies for crimes that did not exist," that Babitz was "forced to incur legal fees" as a result of "malicious charges," and that "these malicious acts" were committed in violation of the Fourth Amendment, (see Doc. 1, Compl. ¶¶ 28-37), the Court infers that the underlying claim at issue is one of malicious prosecution. The Court thus addresses whether Babitz has pleaded a viable cause of action under that theory.

To state a prima facie case for a § 1983 claim of malicious prosecution, a plaintiff must show that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2012) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)). Pertinent to the Court's analysis here, to establish the second element of a prima facie case, the underlying criminal proceeding must have been "disposed of in a way that

11

indicates the innocence of the accused." Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir.

2009). A plaintiff may attempt to show his innocence by demonstrating

> (a) a discharge by a magistrate at a preliminary hearing, or
> (b) the refusal of a grand jury to indict, or
> (c) the formal abandonment of the proceedings by the public prosecutor, or
> (d) the quashing of an indictment or information, or
> (e) an acquittal, or
> (f) a final order in favor of the accused by a trial or appellate court.

Kossler, 564 F.3d at 187 (quoting Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002)

(internal quotation marks and emphasis omitted).

Babitz avers in Count II of the Complaint that Officer Yackulich charged him

with "multiple felonies for crimes that did not exist" and that "all charges were [later]

withdrawn." (Doc. 1, Compl. ¶¶ 31, 35). Without further elaboration, these threadbare

recitals of a cause of action fail to overcome a Rule 12(b)(6) challenge. The Court finds

that Count II is devoid of any facts that establish (1) the crimes for which Babitz was

charged or (2) that such charges were terminated in Babitz's favor. Because the

Complaint fails to satisfy these elements, the Court will dismiss Count II of the

Complaint without prejudice. In amending the Complaint, Babitz will be provided the

opportunity to plead additional facts that clearly establish the prima facie elements for a

malicious prosecution claim.

### 3. Count III of the Complaint: Municipal Liability

Plaintiffs aver in the final Count of the Complaint that the "County of Cambria

and [the] Vintondale Police Department tolerated and ratified a pattern and practice of

unjustified unreasonable illegal use of force." (Doc. 1, Compl. ¶ 38). Defendants argue

that Plaintiffs have failed to state a claim upon which relief can be granted because the

Complaint does contain sufficient facts to show the specific "policy, custom, or practice" at issue. (See Doc. 10, at 19-20).

With regard to Count III, the Court agrees with Defendants' threshold argument that Plaintiffs have failed to assert a claim against a proper legal entity. Plaintiffs seek judgment against the Vintondale Police Department.[5]  To proceed on a municipal liability theory, however, a plaintiff must show that the municipal defendants are "person[s]" under the § 1983 statute. Although "persons" include local governmental entities under § 1983, the term does not include local police departments. See, e.g., Padilla v. Township, 110 F. App'x. 272, 278 (3d. Cir. 2004); Johnson v. City of Erie, Pa., 834 F. Supp. 873, 878 (W.D. Pa. 1993) ("City of Erie Police Department is a sub-unit of the city government and, as such, is merely a vehicle through which the city fulfills its policing functions."); Peterson v. Eastern Dep't Criminal Investigations, No. Civ.A. 99–41531999, 1999 WL 718551 (E.D. Pa. Aug. 26, 1999). Because the Vintondale Police Department is not a "person" under the § 1983 statute, it is not a proper party to this action. For this reason alone, the Court will dismiss Count III of the Complaint for failure to state a claim.

To the extent that the Court finds it prudent to provide additional commentary on Count III, it will do so briefly. Municipal liability under § 1983 attaches only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . ." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694

---

[5] Plaintiffs also demand judgment against Officer Yackulich and the County of Cambria. As stated above, the County of Cambria has been dismissed from this litigation. Furthermore, Plaintiffs cannot demand judgment against a police officer in his individual capacity under a § 1983 municipal liability theory.

13

(1978).  Although the task of showing an official policy or custom has been "approached in different ways," Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), the plaintiff must prove that "an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Id. (citing Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)).  Furthermore, the plaintiff must demonstrate that the unlawful policy or custom was the proximate cause of the injuries suffered.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985); Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).

Plaintiffs in this case aver that "municipal defendants"—presumably, members of the Vintondale Police Department—"failed to discipline or prosecute" known incidents of abuse of police powers," "refused to investigate complaints of previous incidence of abuse of police powers," and "encouraged police officers . . . to believe that such abuse of police powers and improper use of force was permissible."  (Doc. 1, Compl. ¶ 38). Plaintiffs further aver that these "policies and customs" proximately caused their alleged injuries.  (Id. ¶ 40).  Nevertheless, aside from vague allegations of an unlawful policy or practice, Plaintiffs have not alleged that any specific, unlawful governmental policy, regulation, or decision has been adopted.  See Monell, 436 U.S. at 694.  Plaintiffs also make no mention of any policymakers who have specific knowledge of, or who have acquiesced in, any constitutionally suspect practice.  See Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir.1989) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481-82 n.10 (1986)).  Instead, Plaintiffs merely cite one incident involving a lower level employee who, when acting under color of state law, has allegedly violated their constitutional rights.  Such a showing does not suffice to establish an official policy or custom for §

14

1983 municipal liability. See Wakshul v. City of Philada., 998 F. Supp. 585, 591 (E.D. Pa. 1998) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

The Court will dismiss Count III because Plaintiffs have failed to state a claim against a proper governmental entity for purposes of § 1983 municipal liability. However, in amending the Complaint, Plaintiffs will be provided the opportunity to plead facts that support their bare legal conclusion that the Borough of Vintondale has engaged in a "pattern and practice of unjustified unreasonable illegal use of force." Plaintiffs have failed to plead facts in Count III showing they have a "plausible claim for relief" and have failed to recite even the most basic legal prerequisites to establish § 1983 municipal liability.

## VI.    CONCLUSION

For the reasons set forth in this Memorandum, Defendant's Motion to Dismiss (Doc. 9) will be granted. Counts I, II, and III of Plaintiff's Complaint (Doc. 1) will be dismissed. Plaintiffs, however, will be granted leave to file an amended complaint that satisfies the deficiencies noted above. An appropriate order follows.

KIM R. GIBSON
United States District Judge

Dated: September 26, 2013

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ZOLINDA KIRIAKDIS and JULIAN BABITZ, | ) ) ) CIVIL ACTION NO. 3:12-188 |
| Plaintiffs, | ) ) JUDGE KIM R. GIBSON |
| v. | ) ) |
| BOROUGH OF VINTONDALE POLICE DEPARTMENT and OFFICER ERIC YACKULICH, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

**AND NOW**, this $\underline{26}^{th}$ day of September, 2013, upon consideration of Defendant's Motion to Dismiss (Doc. 9), and for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED** that:

1. The Motion to Dismiss (Doc. 9) is **GRANTED**;

2. Counts I, II, and III of the Complaint (Doc. 1) are **DISMISSED**; and

3. Plaintiffs are granted leave to file an amended complaint within 21 days of this Order.

**BY THE COURT:**

**KIM R. GIBSON
UNITED STATES DISTRICT JUDGE**